IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action 14-cv-01593-MJW

COCONA, INC., a Delaware corporation,

Plaintiff,

v.

SINGTEX INDUSTRIAL CO., LTD., a Taiwanese company,

Defendant.

---

**ORDER ON
DEFENDANT'S MOTION TO DISMISS
(Docket No. 15)**

---

**MICHAEL J. WATANABE
United Stated Magistrate Judge**

Cocona Inc. created a process for incorporating carbon particles from coconuts into fabric. The fabric is used for outdoor gear, to enhance odor control, moisture absorption, and UV protection without the use of synthetic chemicals. Singtex Industrial Co. used to manufacture that fabric for Cocona, but has since gone into business selling a competing product (called S.Café) made from coffee rather than coconut. In this action, Cocona asserts claims against Singtex for breach of contract, unfair competition, theft of trade secrets, and business torts—and Singtex now asks this Court to dismiss the claims under Rule 12(b)(6) (Docket No. 15).

The parties have consented to have this case resolved in its entirety by a magistrate judge under 28 U.S.C. § 636(c) (Docket Nos. 16, 17). The Court GRANTS the motion in part and DENIES it in part.

2

**Cocona's Legal Claims**

Cocona asserts five claims for relief:

- First, that Singtex breached the "Supplier Agreement," a 2008 contract between the parties;

- Second, that Singtex breached the "Nondisclosure Agreement," a 2005 contract between the parties;

- Third, that Singtex has misrepresented its product and unfairly competed against Cocona in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

- Fourth, that Singtex misappropriated Cocona's trade secrets in violation of Colorado's Uniform Trade Secrets Act, C.R.S. §§ 7-74-101 *et seq.*; and

- Fifth, that Singtex interfered with Cocona's customer contracts, a common law tort.

**Analysis**

Under Rule 12(b)(6), the Court must accept the facts Cocona alleged in the Complaint as true; further, if there are inferences that must be drawn, the Court must draw them in Cocona's favor.  *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010). Only factual allegations are to be accepted as true.  Allegations of legal conclusions—for example, that a contract was valid, that conduct was willful or bad faith, or that measures were reasonable—are not included in the Court's analysis.  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).  Generally speaking, only the Complaint is to be considered.  However, "if a plaintiff does not incorporate by

reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  The parties agree that the contracts attached to Singtex's motion to dismiss are true copies (*see* Document No. 18, ¶ 4), and so the Court will consider the terms of those contracts.

Once the set of operative facts is established according to the foregoing rules, the Court must decide whether those facts adequately state grounds for relief.  It is not necessary for Cocona to allege a prima facie case including every last element of its legal claims—but it must put forward enough facts for the Court to infer that its claims are at least plausible.  *Khalik v. United Air Lines*, 671 F.3d 1188, 1191–92 (10th Cir. 2012).

## I.    Statute of Limitations

Singtex first argues that all of the claims in the Complaint are barred by the applicable statutes of limitations.  As the Ninth Circuit recently explained:

> Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint.  If, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper.

*ASARCO, LLC v. Union Pac. R.*, ___ F.3d ___, 2014 WL 4211113, at *3 (9th Cir. Aug. 27, 2014) (internal citations omitted); *accord Radil v. Sanborn Western Camps, Inc.*, 384 F.3d 1220, 1224–27 (10th Cir. 2004) (deciding that where factual dispute exists as to affirmative defense in workers' comp statute, issue must be put to the trier of fact);

4

*Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1311 n. 3 (10th Cir. 1999) ("Rule

12(b)(6) is a proper vehicle for dismissing a complaint that, on its face, indicates the

existence of an affirmative defense such as noncompliance with the limitations period"),

*overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101

(2002).

The parties agree that all of Cocona's claims are subject to a three-year statute

of limitations except the tort claim, which is subject to a two-year statute (Document 15,

p. 9 nn. 6–7; Document 19, pp. 8–9).  Because the Complaint was filed in June 2014,

Cocona's suit is thus untimely as to any non-tort claims that accrued before June 2011

and any tort claims that accrued before June 2012.  As to each of these claims, a claim

accrues only when the plaintiff knows, or should know in the exercise of reasonable

diligence, of facts establishing each element of the claim.  *See, e.g.*, *Miller v. Armstrong*,

817 P.2d 111 (Colo. 1991).

Singtex argues that, on the face of the Complaint, Cocona's claims accrued in

2010 at the latest.  To support this argument, Singtex points to the following allegation,

in Paragraph 27 of the Complaint:

> In or around 2010, Singtex began marketing a composite yarn
> technology it called "S.Café."  Singtex began targeting customers and
> potential customers of Cocona's proprietary products.

(Document 1, ¶ 27).  From that language, Singtex asserts: "Cocona admits it has known

about its claims since 2010" (Document 15, p. 2; *see also* Document 15, pp. 9–11).

Obviously, Cocona's allegation is not an admission of any such thing.  It is an allegation

about the timing of Singtex's conduct, and it says nothing at all about Cocona's actual

knowledge of that conduct.  Likewise, Cocona included screenshots from Singtex's website as exhibits to the Complaint, and Singtex points out that those websites (as the screenshots clearly show) are copyrighted in 2010.  Again, these exhibits go to the timing of Singtex's conduct, and say nothing at all about Cocona's actual knowledge of that conduct.

Nothing else in the Complaint or its exhibits bears specifically on the timing of Singtex's conduct.  Thus, as to constructive knowledge, Singtex asks the Court to conclude that Paragraph 27 and the copyrighted website, together, establish that Cocona would have known of its alleged injuries in 2010 had it been reasonably diligent.  But to so hold, the Court would need to infer (for example) that Singtex successfully stole customers in 2010, or that the mere existence in 2010 of Singtex's website should have alerted Cocona that Singtex had stolen its trade secrets and that Singtex's marketing claims were false or misleading.  At the 12(b)(6) stage, the Court must draw these inferences in the opposite direction—in Conoca's favor—if there is any reasonable way to do so.  And it is, ultimately, reasonable to infer the opposite.  One can read the Complaint and reasonably infer that no customers were successfully stolen until some point after 2012.  One can read the Complaint and reasonably infer that the website would not have shown up on Cocona's radar until sometime in 2011 despite all due diligence.  Accordingly, there is no "obvious bar to securing relief on the face of the complaint," *ASARCO, LLC*, 2014 WL 4211113, at *3, and Singtex's affirmative defense cannot prevail on a motion to dismiss.

6

## II.  Claim 1: Breach of the Supplier Agreement

Cocona alleges that Singtex breached the 2008 Supplier Agreement:

> Upon information and belief, Singtex breached the terms of the Supplier Agreement, including without limitation, by offering its S.Café and other natural fabric products in direct competition with Cocona; by using without permission Cocona's intellectual property, technology, and other proprietary materials; and by reverse engineering Cocona materials and processes.

(Docket No. 1, ¶ 49).  Singtex does not challenge the factual sufficiency of Cocona's

pleadings on this claim.  Singtex instead argues that under Colorado law the contract is

unenforceable in whole or in part, for two reasons: (1) the non-compete clause in the

contract is void as against public policy; and (2) in any event, the contract had been *de*

*facto* terminated by Cocona before any alleged breach occurred.

### A.    Non-compete clauses under Colorado law

The 2008 Supplier Agreement contains a clause prohibiting Singtex from

competing against Cocona for the duration of their business relationship and for six

months thereafter:

> [2](e) Non-compete.    Company acknowledges that Cocona will be sharing certain confidential information and know-how with Company. Other than with respect to the manufacture and sale of Certified Products in accordance with the express terms herein, Company agrees that during its engagement with Cocona and for a period of six (6) months after provision of written notice of termination of Company's engagement with Cocona, Company will not engage directly or indirectly in the manufacture or sale of fabric products (whether knit or woven) incorporating charcoal or carbon particles (such as those derived from coconut, bamboo or similar sources) or other active particles.

(Docket No. 15-2, p.3).

7

Colorado has a strong public policy against non-compete clauses.  By statute, "[a]ny covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void."  C.R.S. § 8-2-113(2).  Such contracts are void *ab initio*, not merely voidable. *Mgmt. Recruiters of Boulder, Inc. v. Miller*, 762 P.2d 763, 765 (Colo. App. 1988).  The statute has four exceptions, but they are narrowly construed.  *Nat'l Propane Corp. v. Miller*, 18 P.3d 782, 787 (Colo. App. 2000).  Moreover, even where a non-compete agreement is not barred by statute, it must still be reasonable in terms of both duration and geographic scope.  *Nat'l Graphics Co. v. Dilley*, 681 P.2d 546, 657 (Colo. App. 1984).

It is not clear that the statute applies in this context, however.  On its face, the statute refers only to a person's "right to receive compensation" from "an employer." And while courts routinely apply it more broadly, *see, e.g.*, *Keller Corp. v. Kelley*, 187 P.3d 1133, 1138–40 (Colo. App. 2008) (franchisor/franchisee); *DBA Enters. Inc. v. Findlay*, 923 P.2d 298, 301–03 (Colo. App. 1996) (sale of franchise); *Colo. Supply Co. v. Stewart*, 797 P.2d 1303, 1305 (Colo. App. 1990) (independent contractors); *Smith v. Sellers*, 747 P.2d 15, 16–17 (Colo. App. 1987) (dental partner/independent contractor), there are only two cases considering the statute in a context analogous to this case— and they came to different conclusions.  *Compare Nutting v. RAM Southwest*, 106 F. Supp. 2d 1121, 1124–25 (D. Colo. 2000) (Babcock, J.) (statute applies to manufacturer/distributor contract), *with Energex Enterprises, Inc. v. Anthony Doors, Inc.*,

8

250 F. Supp. 2d 1278, 1281 (D. Colo. 2003) (Kane, J.) (statute does not apply to licensee/licensor relationship).

At this stage, the Court need not determine whether the statute applies— because even if it does, Cocona's pleadings bring this case within the "protection of trade secrets" exception under C.R.S. § 8-2-113(2)(b).  *See Energex*, 250 F. Supp. 2d at 1281–82 (applying trade-secret exception in the alternative); *cf. Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1133 (10th Cir. 2003) (reversing summary judgment against plaintiff as to non-compete claim where question of fact existed as to related trade-secrets claim).  For a covenant to fit that exception, "the purpose of the covenant must be the protection of trade secrets, and the covenant must be reasonably limited in scope to the protection of those trade secrets."  *Gold Messenger, Inc. v. McGuay*, 937 P.2d 907, 910–11 (Colo. App. 1997).

As discussed below, under Claim 4, the Complaint adequately pleads the existence of protectable trade secrets.  And as to the reasonableness of the limitation, "a noncompete agreement must not be broader than necessary to protect the promisee's legitimate interests, and it must not impose hardship on the promisor."  *Reed Mill & Lumber Co. v. Jensen*, 165 P.3d 733, 736 (Colo. App. 2006); *see also Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 526–28 (Colo. App. 2011) (comparing trade-secret cases).  Reasonableness turns on the facts of each case.  *Id.*  Here, the non-compete clause does not prohibit Singtex from creating or selling fabrics that do not incorporate "active particles."  That term will need to be defined over the course of this litigation, but it is not unreasonably broad on its face.  Further, given the non-compete clause's

prefatory sentence, the clause may allow Singtex to sell fabrics incorporating active particles so long as Singtex does not use Cocona's trade secrets to do so.  *See, e.g.*, *Gold Messenger*, 937 P.2d at 910–11 (reading non-compete narrowly in light of contract preamble).  Finally, the clause operates for only six months after the end of the 2008 Supplier Contract, a length of time that is unlikely to be excessive.  Accepting the allegations in the Complaint as true and drawing all factual inferences in Cocona's favor, the Court cannot say that this non-compete clause is unreasonable.  Cocona has stated a claim for an enforceable non-compete agreement under C.R.S. § 8-2-113(2)(b).  Thus, even if the statute applies, Singtex's argument fails.

### B.      *De facto* termination

The second argument, about *de facto* termination, can be resolved very quickly, as there is literally no factual basis for it in the Complaint.  Singtex cites no legal authority for establishing *de facto* termination, and it cites to no factual allegations in the Complaint from which it might be inferred that the unidentified legal requirements are satisfied.  Singtex correctly points out that the non-compete clause in the Supplier Agreement prohibits competition for only six months after the termination of the contract.  But accepting the facts as alleged in the Complaint to be true, and drawing inferences in Cocona's favor, it is impossible to find that Cocona abandoned or terminated the contract or in any way concluded business with Singtex—and more specifically, it is impossible to find that Cocona abandoned the contract six months before the breaching conduct occurred (allegedly, starting in 2010).

Singtex's motion to dismiss Claim 1 is denied.

10

### III.   <u>Claim 2: Breach of the Nondisclosure Agreement</u>

Cocona alleges that Singtex also breached the 2005 Nondisclosure Agreement:

> Upon information and belief, Singtex breached the terms of the Nondisclosure Agreement, including without limitation, by failing to hold in strict confidence confidential and proprietary information provided to it by Cocona and by using Cocona's confidential and proprietary Information, in whole or in part, to develop, test, and fabricate its fiber products, including its S.Café product.

(Docket No. 1, ¶ 55).  Again, Singtex does not challenge the factual sufficiency of Cocona's pleadings on this claim.  Singtex instead argues that the 2005 Nondisclosure Agreement is unenforceable because the 2008 Supplier Agreement superseded it.

In Colorado, contract interpretation is a matter of law—unless the contract is ambiguous.  *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313–14 (Colo. 1984).  The interpretation of an ambiguous contract is a question of fact, as to what the parties to the contract intended.  *Id.*  Whether a contract is, or is not, ambiguous is itself a legal determination.  *Id.*  A contract is ambiguous if it is susceptible of more than one reasonable interpretation.  *Moland v. Indus. Claim Appeals Office*, 111 P.3d 507, 510 (Colo. App. 2004).

To show that the 2008 Supplier Agreement superseded the 2005 Nondisclosure Agreement, Singtex points to the latter contract's "entire agreement" clause:

20. ENTIRE AGREEMENT

> This Agreement supersedes any course of dealing or usage of trade and any previous understanding, oral or written, with respect to the subject matter of this Agreement.  Any modification of this Agreement shall be effective only if in writing and executed by the parties.

(Docket No. 15-2, p.8).  According to Singtex, the two contracts cover the same subject matter, and this clause thus voids the earlier contract.  To rebut the point, though, Cocona points to another clause in the latter contract—one expressly contemplating a separate nondisclosure agreement:

> [2](g)  *Nondisclosure.*  All Cocona information and materials will be provided to [Singtex] only under strict terms of confidentiality prohibiting disclosure and restricting use except as expressly set for herein and/or under a separate Nondisclosure Agreement to be executed by [Singtex]. . . .

(Docket No. 15-2, p.4).  According to Cocona, this clause establishes either (1) that the parties intended for the 2005 Nondisclosure Agreement to survive, or (2) that in any event there is at least ambiguity on this point.

A contract must be interpreted "in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless."  *Pepcol*, 687 P.2d at 1313.  "Each *word* in an instrument is to be given meaning if at all possible."  *U.S. Fid. & Guar. Co. v. Budget Rent–A–Car Sys., Inc.*, 842 P.2d 208, 213 (Colo. 1992).  Here, there are at least two different ways—with two different outcomes—to harmonize these two clauses.

First, Paragraph 2(g), as a literal matter, is forward-looking, allowing for a separate agreement "to be" executed—whereas Paragraph 20 is backward-looking, superseding only "previous" agreements.  The two clauses can therefore be read together in the way Singtex urges, operating to supersede all previous agreements without barring contemporaneous or future nondisclosure agreements.

12

Second, however, Paragraph 2(g) clearly contemplates that "strict terms of confidentiality" exist *somewhere*, and there are no other clauses in the contract on point. Further, the vast majority of the 2008 Supplier Agreement pertains to the production of fabric—including three clauses restricting Singtex's *use* of Cocona's information, but none restricting Singtex's *disclosure* of that information.  The two clauses can therefore also be read together in the way Cocona urges, by interpreting the superseded "subject matter" in Paragraph 20 to be previous agreements about manufacturing fabric but not those about protecting confidential information.

Neither of these interpretations is unreasonable.  And because the clauses are susceptible of more than one reasonable interpretation, the contract is ambiguous as a matter of law.  Extrinsic evidence will be necessary to determine the intent of the parties as to whether the 2008 Supplier Agreement superseded the 2005 Nondisclosure Agreement.  Singtex's motion to dismiss Claim 2 is therefore denied.

## IV.   Claim 3: Unfair Competition under the Lanham Act

Cocona alleges that Singtex unfairly competed in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, under two theories—first, by misrepresenting the traits of its own product, and second, by misrepresenting how its product stacks up next to Cocona's:

> Upon information and belief, Singtex has in commercial advertising and/or promotion, including on its website, knowingly misrepresented the nature, characteristics, and/or qualities of its S.Café fabric products, including by claiming that the S.Café fabric provides the benefits of odor absorption, ultraviolet protection, and moisture control.

> Singtex has further misrepresented the capability of its S.Café fabric products to perform in a manner comparable to Cocona's proprietary products despite its knowledge that the S.Café products do not

> have the same performance qualities as Cocona products due to use of
> inferior materials and standards of processing.

(Docket No. 1, ¶¶ 58–59).  Singtex argues that Lanham Act claims premised on

misrepresentations must be pleaded under the heightened standards of Federal Rule of

Civil Procedure 9(b), and in any event challenges the factual sufficiency of Cocona's

pleadings under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544 (2007).  Relatedly, Singtex argues that even if the pleadings are

plausibly and particularly alleged, Cocona has not stated an actionable claim because

the alleged misrepresentations are mere puffery.

## A.   Pleading Under Federal Rule of Civil Procedure 8(a) or Rule 9(b)

The relevant portion of the Lanham Act provides:

> (1) Any person who, on or in connection with any goods or services, or
> any container for goods, uses in commerce any word, term, name,
> symbol, or device, or any combination thereof, or any false designation of
> origin, false or misleading description of fact, or false or misleading
> representation of fact, which—
>
> > . . .
> >
> > (B) in commercial advertising or promotion, misrepresents the
> > nature, characteristics, qualities, or geographic origin of his or her
> > or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is
> or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  It is not necessary for the misrepresentation to be knowing or

intentional; even wholly innocent statements, if literally false or tending to mislead, are

actionable.  *See Tempur-Pedic Int'l Inc. v. Angel Beds LLC*, 902 F. Supp. 2d 958, 965–

66 (S.D. Tex. 2012).

14

Federal Rule of Civil Procedure 8(a) prescribes the pleading requirements for most claims.  It requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  By contrast, Rule 9(b) requires that "a party must state *with particularity* the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b) (emphases added).  This standard requires the complaint to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (citation omitted).

Courts are split on whether Rule 9(b) applies to false-advertising claims under the Lanham Act.  Some reason that Rule 9(b) applies because misrepresentation is a species of fraud at common law and generally involves fraudulent conduct.  *See, e.g.*, *Vertical Web Media, LLC v. Etailinsights, Inc.*, 2014 WL 2868789, at *3 (N.D. Ill. June 4, 2014); *SKEDKO, Inc. v. ARC Prods., LLC*, 2014 WL 585379, at *2–3 (D. Ore. Feb. 13, 2014); *Volunteer Firemen's Ins. Servs., Inc. v. McNeil & Co.*, 221 F.R.D. 388, 393 (W.D. N.Y. 2004).  Others reason that Rule 9(b) does *not* apply because the Lanham Act requires no level of knowing, intentional, or even negligent behavior.  *See, e.g.*, *United States ex rel. Knisely v. Cintas Corp., Inc.*, 298 F.R.D. 229, 238–39 (E.D. Pa. 2014); *Canales v. ALM Media LLC*, 2013 WL 5719476, at *9 (W.D. Tex. Oct. 18, 2013); *Tempur-Pedic Int'l*, 902 F. Supp. 2d at 965–67; *John P. Villano Inc. v. CBS, Inc.*, 176 F.R.D. 130, 131 (S.D. N.Y. 1997).

15

Neither the Tenth Circuit nor the District of Colorado has previously ruled on the question.  Further, the District of Colorado has conflicting authority as to whether Rule 9(b) applies to the closely analogous common law tort of negligent misrepresentation. Judges Brimmer, Blackburn, Kane, and Arraj have all applied Rule 9(b) to such claims. *Blixseth v. Cushman & Wakefield of Colo., Inc.*, Case No. 12-cv-00393-PAB-KLM, 2013 WL 5446791, at *8 (D. Colo. Sept. 30, 2013); *Cunningham v. Standard Fire Ins. Co.*, Case No. 07-cv-02538-REB-KLM, 2009 WL 4377451, at *2 (D. Colo. Sept. 19, 2008); *Van Leeuwan v. Nuzzi*, 810 F. Supp. 1120, 1123–24 (D. Colo. 1993); *W. Gas Processors, Ltd. v. Enron Gas Processing Co.*, Case No. 87-A-1472, 1988 WL 73307, at *4–6 (D. Colo. July 7, 1988).  Meanwhile, Judges Babcock and Daniel have held otherwise.  *Denver Health & Hosp. Auth. v. Beverage Distribs. Co.*, 843, F. Supp. 2d 1171, 1177–78 (D. Colo. 2012); *Conrad v. Educ. Res. Inst.*, 652 F. Supp. 2d 1172, 1183 (D. Colo. 2009) (adopting Magistrate Judge Tafoya's report).

Despite the bottom-line differences in these cases, however, almost all of them apply reasoning very similar to the Ninth Circuit's leading case on Rule 9(b), *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003).  The Ninth Circuit held that Rule 9(b) can apply to either all of a claim or part of it, under three circumstances. First, if fraud or its equivalent is an element of the claim, Rule 9(b) obviously applies. *See id.*  Second, if fraud is not an element of a claim but the plaintiff nonetheless "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim," Rule 9(b) applies to "the pleading of that claim as a whole."  *Id.*  Finally, if the plaintiff "choose[s] not to allege a unified course of fraudulent

conduct in support of a claim, but rather to allege some fraudulent and some non-fraudulent conduct," "only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements." *Id.* This focus on discrete factual averments, rather than the elements of the legal claim, also finds support in the Tenth Circuit. *See Schwartz*, 124 F.3d at 1251–52 (distinguishing *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272 (3d Cir. 1992), and holding Rule 9(b) did not apply, despite identical legal claim, because case at bar alleged facts for negligent rather than intentional misstatements).

This Court concludes that Rule 9(b) applies to false-advertising claims under the Lanham Act only insofar as the factual averments allege intentional or knowing misrepresentations. Such averments must be pled with particularity. To the extent the Lanham Act claim is based entirely on "a unified course" of such conduct, the entire claim must be pled with particularity.

Applying that standard to Cocona's two theories of recovery, this Court holds that Rule 9(b) applies to Cocona's false-comparison claim (*see* Docket No. 1, ¶ 59). As to that theory, Cocona alleges: "Singtex made these statements to Cocona's customers knowing that they were false and/or misleading as Singtex knew that the S.Café fabric products do not have performance qualities that are equivalent to Cocona's products" (Docket No. 1, ¶ 40). Cocona alleges this claim as a knowing misrepresentation—a species of fraud, subject to Rule 9(b) pleading.

Cocona's second theory is based not on Singtex's allegedly false comparisons to Cocona's products, but Singtex's allegedly misleading statements of its products' own qualities (*see* Docket No. 1, ¶ 58). As to that theory, the only allegations bearing on

Singtex's level of knowledge or intent are those contained *after* the narrative portion of the Complaint, in the specific legal claims.  There, Cocona alleges that Singtex unfairly competed in a "knowing, willful, intentional, and bad faith" violation of the Lanham Act (Docket No. 1, ¶ 60).  But in reviewing a Complaint, the Court disregards bare legal conclusions.  *Kansas Penn Gaming*, 656 F.3d at 1214.  Further, these particular legal conclusions have no bearing on liability under the Lanham Act; they relate to remedies.  *See* 15 U.S.C. § 1117(a).  Looking to the *factual* allegations in the Complaint, Cocona alleges that Singtex made representations about its product (Docket No. 1, ¶¶ 28–34, 39) and that by one specific measure those representations are misleading (Docket No. 1, ¶¶ 42–44).  The factual allegations underlying this theory of recovery do not sound in fraud in any way, and the Court holds that Rule 9(b) does not apply to these averments.

### B.     Sufficiency of Cocona's Pleadings

To state claim for unfair competition based on false advertising, under the Lanham Act, a plaintiff must plead facts showing the following elements:

(1) that the defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product;

(2) in commerce;

(3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and

(4) injure the plaintiff.

*NetQuote, Inc. v. Byrd*, 504 F. Supp. 2d 1126, 1133–34 (D. Colo. 2007) (Ebel, J.).  If the plaintiff shows literal falsity, the third element is presumed established; for statements that are not literally false, the plaintiff must show that they tend to mislead or confuse

the relevant market.  *See Zoller Labs., LLC v. NBTY, Inc.*, 111 F. App'x. 978, 982 (10th

Cir. 2004).

As to Singtex's allegedly false comparisons, which must be pled with particularity

under Rule 9(b), Cocona fails to meet these elements.  To begin with, Cocona has not

identified any comparisons that were made "in connection with the commercial

advertising or promotion of its product."  Instead, Cocona alleges that "Singtex has

expressly compared S.Café products to Cocona's proprietary yarn fabrics" and that

"[u]pon information and belief, Singtex informed Cocona's customers that the S.Café

products provide the same performance qualities as Cocona's proprietary products"

(Docket No. 1, ¶¶ 36, 39).  Sporadic conversations do not constitute commercial

advertising.  *See Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273–74 (10th Cir.

2000); *Synygy, Inc. v. Scott–Levin, Inc.*, 51 F. Supp. 2d 570, 577 (E.D. Penn. 1999);

*Fashion Boutique of Short Hills v. Fendi USA, Inc.*, 942 F. Supp. 209, 216 (S.D. N.Y.

1996).  Moreover, even if Cocona could show that the conversations reached enough of

the market to constitute "commercial advertising," it has not alleged the "who, what,

when, where and how of the alleged" falsehoods, as required under Rule 9(b).  *U.S. ex

rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir.

2006).  Cocona's false-comparison theory of recovery should be dismissed for failing to

state a claim.

As to Singtex's allegedly misleading representations of its own products'

qualities, which must be pled under Rule 8(a), Cocona alleges facts establishing each

element of the claim.  Cocona has identified specific statements, made on Singtex's

19

website—unquestionably in connection with the commercial advertising or promotion of its product—that it believes to be false or misleading (Docket No. 1, ¶¶ 28–34, 39).  The first two elements are therefore satisfied.  Cocona has provided a basis for proving those statements false or misleading under a specific measurement (Docket No. 1, ¶¶ 42–44) and alleged that some customers have chosen Singtex's product over Cocna's as a result of the statements (Docket No. 1, ¶ 45).  These allegations support an inference as to third element, and directly support the fourth element.  Considering the factual allegations in as a whole, Cocona's claim is eminently plausible.

Singtex also argues that, even if the claims are plausibly alleged, they fail as a legal matter because the challenged statements are too subjective to be actionable.  Although Singtex does not use the word, this is an argument that Singtex's advertisements are mere puffery.  "Essential to any claim under section 43(a) of the Lanham Act is a determination of whether the challenged statement is one of fact— actionable under section 43(a)—or one of general opinion—not actionable under section 43(a)."  *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495–96 (5th Cir. 2000) (Jolly, J.).  "Bald assertions of superiority or general statements of opinion cannot form the basis of Lanham Act liability. . . .  Rather the statements at issue must be a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact."  *Id.* (internal citations and quotation marks omitted).

Puffery is not actionable because courts assume that consumers aren't actually misled by slick sales talk.  *Id.*  As one treatise puts it, puffing is "a seller's privilege to lie

20

his head off, so long as he says nothing specific, on the theory that no reasonable man

would believe him, or that no reasonable man would be influenced by such talk."  W.

Page Keeton, et al., PROSSER AND KEETON ON THE LAW OF TORTS § 109, at 757 (5th

ed.1984).  Accordingly, courts have defined two categories of false or misleading

statements that are not actionable under the Lanham Act because they are mere

puffery: "(1) an exaggerated, blustering, and boasting statement upon which no

reasonable buyer would be justified in relying; or (2) a general claim of superiority over

comparable products that is so vague that it can be understood as nothing more than a

mere expression of opinion."  *Pizza Hut, Inc.*, 227 F.3d at 496-97.

Here, the advertisements attached to Cocona's Complaint meet neither test, and

in no way constitute puffing.  They are expressions not of opinion, but of fact.  As

summarized in Cocona's Complaint:

> Specifically, Singtex claims on the S.Café Website that S.Café
> "utilizes coffee grounds' natural ability to adsorb odors for a comfortable
> wearing experience. It also provides UV protection, and is very fast
> drying." (*See* **Exhibit 1**.)

> According to Singtex marketing information available on the S.Café
> Website, S.Café relies on the spaces created within a green coffee bean
> as it expands during the roasting process for these "high performance"
> features.

> With respect to odor absorption, Singtex states on the S.Café
> Website: "[w]ith our coffee ground permanently imbedded in the fiber, the
> particles work hard with controlling and absorbing odors. The trapped
> odors are then released with the [sic] your next wash-and-dry cycle of your
> S.Café clothing." (*Id.*)

> With respect to ultraviolet protection, Singtex states on the S.Café
> Website: "[w]ith S.Café fabric coffee particles in the fabric, these particles
> actually refract and diffuse the sun's rays. This provides for a natural UV
> protection throughout all the S.Café fabric collection." (*Id.*)

(Docket No. 1, ¶¶ 31–34).  These are specific factual statements.  True, they do not on

their face provide any frame of reference.  But Cocona alleges that the claims can be

measured by comparing Singtex's performance against "a traditional polyester fiber that

has not been treated with chemicals" (Docket No. 1, ¶¶ 42–45).  Cocona may or may

not ultimately persuade the trier of fact that, based on this measurement, Singtex's

claims are misleading.  *Cf. Pizza Hut, Inc.*, 227 F.3d at 501–04 (finding actionable non-

puffery but reversing jury verdict due to insufficient evidence).  But either way, the Court

finds that this suffices to state a claim.

Insofar as Cocona claims that Singtex knowingly misrepresented its product in

comparison to Cocona's while soliciting customers, Cocona has failed to state a claim

and has failed to plead with particularity.  Singtex's motion to dismiss is granted as to

that theory of recovery.  Insofar as Cocona claims that Singtex's website contains

misleading statements of fact, Cocona has adequately pled its claim.  Singtex's motion

to dismiss is denied as to that theory of recovery.

## V.   Claim 4: Misappropriation of Trade Secrets

Cocona alleges that Singtex also stole its trade secrets:

> Singtex's illicit use of Cocona's confidential and proprietary
> information in excess of authorization by Cocona and in violations of the
> Agreements to, among other things, develop its own fabric products
> offered in direct competition with Cocona's products constitutes trade
> secret misappropriation.

22

(Docket No. 1, ¶ 67).  Singtex challenges the Complaint's factual sufficiency under *Iqbal*

and *Twombly*.[1]

Colorado has adopted the Uniform Trade Secrets Act ("UTSA"), C.R.S. §§ 7-74-

101 to -110.  Under that statute:

> "Misappropriation" is defined broadly to include the "acquisition" of
> a trade secret by anyone who has reason to know it was acquired by
> improper means, as well as the "disclosure" or "use" of a trade secret
> without consent by anyone who acquired it improperly . . . .  *See* [C.R.S.]
> § 7–74–102(2).  "Trade secret" is defined equally broadly to include all or
> part of virtually any information that is of value, . . . as long as the owner
> has taken measures to prevent it from becoming available beyond those
> to whom he has given limited access.  *See* [C.R.S.] § 7–74–102(4).

*Gognat v. Ellsworth*, 259 P.3d 497, 500–01 (Colo. 2011); *see also Network*

*Telecomms., Inc. v. Boor-Crepeau*, 790 P.2d 901, 903 (Colo. App. 1990) (applying

common-law factors to guide interpretation of "secret" and "of value" in statute).  In

order to state a claim, then, Cocona must allege facts showing (i) that he or she

possessed a valid trade secret, (ii) that the trade secret was disclosed or used without

consent, and (iii) that the defendant knew, or should have known, that the trade secret

was acquired by improper means.  *Shell v. Am. Family Rights Ass'n*, 899 F. Supp. 2d

1035, 1055 (D. Colo. 2012).  To show a valid trade secret, Cocona must show that it

takes reasonable measures to protect the secrecy of the information at issue, and that

the information has economic value.  *See Hertz v. Luzenac Group*, 576 F.3d 1106,

1108–12 (10th Cir. 2009) (vacating summary judgment where record showed genuine

---

[1] Singtex suggests in its Reply that the heightened pleading standards under Rule 9(b)
apply to this claim.  Singtex did not raise this argument in its initial motion.  In any event,
Singtex has not cited any legal authority for the point, and the Court has previously
rejected Singtex's argument.  *SBM Site Servs, LLC v. Garrett*, Case No. 10-cv-00385-
WJM-BNB, 2012 WL 628619, at *10 (D. Colo. Feb. 27, 2012).

23

disputes of fact as to both value and secrecy of information allegedly constituting trade

secret).

Cocona's allegations establish each of these elements.  As to the confidential

information at issue, Cocona alleges:

> During the course of the business discussions and pursuant to the terms of the Nondisclosure Agreement, Cocona disclosed various Confidential Information to Singtex, including but not limited to technical descriptions of Cocona's proprietary technology, production methods, the chemical composition of certain Cocona proprietary products and materials, Cocona's proprietary testing methods, testing results, product comparison information, and technical images.

(Docket No. 1, ¶ 13.)  These are specific factual allegations, not bare legal conclusions.

Likewise, drawing inferences in Cocona's favor, the Complaint plausibly alleges that the

information is of commercial value (*see* Docket No. 1, ¶¶ 6 – 9, 25, 38.)  And Cocona

details a number of steps it takes to keep the information secret:

> Cocona vigorously protects the confidential and proprietary aspects of its business, including its technology, materials and product development know-how, by, without limitation, entering into nondisclosure agreements when engaging in discussions relating to possible business relationships. . . .

> The Supplier Agreement further provided that Cocona's confidential information and proprietary technology remained the sole property of Cocona and that Singtex was prohibited from using Cocona's confidential information and proprietary technology other than for the benefit of Cocona.

> Singtex further agreed and acknowledged that all Cocona information and materials were confidential and that it would not reverse engineer any Cocona product or technology.

(Docket No. 1, ¶¶ 10, 19, 20.)  Again, these are not bare legal conclusions; these are

specific facts raising a plausible claim that a valid trade secret exists.

24

As to the remaining elements, Cocona alleges—again, with facts, not legal conclusions—that Singtex used Cocona's confidential information in ways that breached its contractual duties:

> In the Supplier Agreement, Singtex acknowledged that it would be receiving confidential and proprietary information from Cocona and agreed not to sell fabric products that competed with Cocona products while the Supplier Agreement remained in effect and for six months thereafter.

> The Supplier Agreement further provided that Cocona's confidential information and proprietary technology remained the sole property of Cocona and that Singtex was prohibited from using Cocona's confidential information and proprietary technology other than for the benefit of Cocona.

> Singtex further agreed and acknowledged that all Cocona information and materials were confidential and that it would not reverse engineer any Cocona product or technology.

> Under the terms and protections of the Supplier Agreement and for the express purpose of facilitating Singtex's ability to produce Certified Products for Cocona, Cocona provided Singtex with Cocona proprietary, confidential information including, but not limited, to detailed technical information related to Cocona's proprietary active natural particle technology and Cocona's proprietary production methods and testing procedures.

> Under the terms and protections of the Supplier Agreement and Nondisclosure Agreement, Cocona instructed Singtex on how to manufacture yarns that incorporated active particles. . . .

> After Singtex had received Cocona's confidential and proprietary information and had begun producing proprietary Cocona products, including Cocona proprietary yarn, Singtex decided to use Cocona's ideas and other confidential and proprietary information to create a product that would compete with Cocona's products but at a lower price point. . . .

> Upon information and belief, Singtex developed its products using Cocona's proprietary and confidential information, including, without limitation, Cocona's confidential technical and business information, proprietary product design details, process and manufacturing methods, testing methods, know-how, and sample products and components of products.

(Docket No. 1, ¶¶ 18–22, 25, 37).  Breaching a contractual duty of confidentiality is one

way to misappropriate a trade secret.  *See* C.R.S. § 7–74–102(2)(b)(III)(B).  Cocona

alleges that Singtex was under a contractual duty, and violated it by using Cocona's

trade secrets to develop its own competing product.  These allegations are plainly

sufficient to state the final two elements of a claim for trade secret misappropriation.

Singtex's motion to dismiss Claim 4 is denied.

**VI.**   **Claim 5: Intentional Interference with Contractual Relations**

Finally, Cocona claims that Singtex intentionally interfered with Cocona's

contractual relations with others:

> Cocona maintains contractual relations with various entities that
> license its technology and/or purchase fabrics incorporating Cocona's
> technology involving active natural particles.
>
> Singtex knew or reasonably should have known of the contractual
> business relationship between Cocona and these entities.
>
> Singtex by words or conduct, or both, intentionally and improperly
> interfered with one or more of these contractual relations.

(Docket No. 1, ¶¶ 74–76).  Singtex challenges the factual sufficiency of the pleading.

First, Singtex argues that the tortious behavior must be pleaded with particularity under

Rule 9(b) and Cocona has failed to so do; second, Singtex argues that Cocona has

failed to plead the remaining elements of the claim with any plausibility.

Colorado recognizes the tort of intentional interference with contractual relations.

*Mem'l Gardens, Inc. v. Olympian Sales & Mgmt. Consultants, Inc.*, 690 P.2d 207, 210

(Colo. 1984) (quoting Restatement (Second) of Torts § 766 (1977)).  The tort comes in

two varieties: "intentional interference with contractual relations," which goes to existing

contracts; and "intentional interference with prospective business relations" or

"prospective economic advantage," which goes to potential future contracts. *See Tara*

*Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1119–20 (D. Colo. 2010). To

prove the tort, a plaintiff must show:

> (1) a valid contract between plaintiff and a third party;
>
> (2) the defendant had knowledge of the contract;
>
> (3) the defendant interfered and induced the other party to breach the contract; and
>
> (4) the plaintiff was injured as a result.

*Westfield Dev. Co. v. Rifle Inv. Assoc.*, 786 P.2d 1112, 1117 (Colo. 1990).[2]

As to the third element, the plaintiff must show that the interference was

intentional and improper. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 501 (Colo. 1996)

(relying on Restatement (Second) of Torts § 767 cmt. a). In the context of business

competitors, "improper" means conduct that is independently actionable and outside the

ordinary course of competition. *Id.* Singtex correctly argues that this element must be

pleaded under the heightened pleading standards of Rule 9(b). *See Dawson v. Litton*

*Loan Servicing, LP*, Case No. 12-cv-01334-CMA-KMT, 2013 WL 1283848, at *7–8 (D.

Colo. Mar. 28, 2013) (citing *Duran v. Clover Cub Foods Co.*, 616 F. Supp. 790, 793 (D.

Colo. 1985)). However, Cocona has done so. Cocona has alleged theft of trade

secrets and false advertising; such conduct constitutes intentional and improper

interference. *See Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1195–1200 (Colo.

---

[2] For prospective contracts, the first element is instead that defendant's conduct "prevented a contract from being formed." *Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1195–1200 (Colo. App. 2009). However, Cocona identifies its claim as one for interference with current, not prospective, contracts.

App. 2009).  And as was detailed above, Cocona has set forth a sufficient factual basis for its Lanham Act and UTSA theories.  It necessarily follows that Cocona has adequately pleaded the intentional-interference element of its tort claim.

Singtex further argues that Cocona has failed to allege facts plausibly stating the remaining.  The heart of Singtex's argument is that Cocona hasn't identified any specific contract, nor any specific breach thereof—in other words, that Cocona has not named names.  Most business-tort cases do identify the specific contracts allegedly disrupted. *See, e.g.*, *Dawson*, 2013 WL 1283848 at *2–3 (mortgage contract); *Otter Prods., LLC v. Treefrog Devs., Inc.*, No. 11-cv-02180-WJM-KMT, 2012 WL 4478951, at *5 (D. Colo. Sept. 28, 2012) (Best Buy distribution contract).  That identification is important: "[a]bsent notice to the defendants of some facts surrounding the type or nature of the 'contracts' their conduct allegedly interfered with," a claim does not satisfy even Rule 8(a) pleading standards.  *AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 956 (N.D. Cal. 2003).  By contrast, although many cases go forward without providing specific names, those are almost always claims for tortious interference with *prospective* business relations—and Cocona does not purport to state a claim for interference with prospective contracts.  *See, e.g.*, *Bartch v. Am. Family Ins. Co.*, No. 13-cv-01931-RBJ, 2014 WL 3260932, at *4–5 (D. Colo. July 8, 2014) (unidentified potential clients departing agent might have kept); *Perkins v. Fed. Fruit & Produce Co.*, 861 F. Supp. 2d 1285, 1291–92 (D. Colo. 2012) (disparaging remarks made by former employer to unidentified potential future employers); *Tara Woods*, 731 F. Supp. 2d at 1119–20 (unidentified prospective purchasers of real estate).

Here, the only information Cocona provides as to the *current* contracts that Singtex interfered with is this: "Singtex has approached a number of Cocona customers, including customers that Singtex learned of through its provision of services to Cocona, and attempted to sell them S.Café products in place of Cocona's proprietary products" (Docket No. 1 ¶ 38).  As to breach or disruption, Cocona alleges only that "[i]n reliance on Singtex's false representations, companies have chosen to purchase the S.Café product instead of Cocona's proprietary products" (Docket No. 1, ¶ 45).  The Complaint provides no allegation of actual contracts (except in the formal claim for relief, which contains bare legal conclusions that the Court ignores on a Rule 12(b)(6) motion). Further, the Complaint provides no basis from which even the number of contracts at issue can be reasonably inferred; Cocona does not state whether it has ten customers or a thousand.  There is insufficient information to infer that the contracts at issue are readily discernible.  And therefore, there is not enough information to put Singtex on notice of the claim it must defend.

"While we do not mandate the pleading of any specific facts in particular, there are certain details the Plaintiff should know and could properly plead to satisfy the plausibility requirement."  *Khalik*, 671 F.3d at 1194.  "While '[s]pecific facts are not necessary,' some facts are."  *Id.* at 1193 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  Here, Cocona ought to be able to identify contracts that have been cancelled, not renewed, disrupted, or diluted.  These are not facts uniquely known by Singtex. "[T]he *Twombly/Iqbal* standard recognizes a plaintiff should have at least some relevant

29

information to make the claims plausible on their face." *Id.* Cocona's fifth claim for relief is dismissed.

### **Conclusion**

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion to Dismiss (Docket No. 15) is:

- DENIED as to Claims 1, 2, 4, and as to Claim 3 insofar as it is based on misrepresentations about Singtex's products' factual qualities;

- GRANTED as to Claim 5 and as to Claim 3 insofar as it is based on misrepresentations about Singtex's products' comparison to Cocona's products, which are hereby DISMISSED WITHOUT PREJUDICE.


Dated: October 9, 2014                    */s/ Michael J. Watanabe*
      Denver, Colorado                    Michael J. Watanabe
                                     United States Magistrate Judge